CRAMPTON, APPELLANT, *v.* THE KROGER CO., APPELLEE.

(No. 5155—Decided February 23, 1959.)

*Mr. Frank W. Cubbon, Jr.,* for appellant.
*Mr. Wm. A. Finn,* for appellee.

Deeds, J.   This is an appeal on questions of law from a judgment of the Court of Common Pleas, entered following the verdict of a jury directed by the trial court at the close of all the evidence.   The error assigned is that "the court erred in directing the jury to return a verdict in favor of the defendant."

The parties will be referred to herein as they appeared in the trial court, the appellant as the plaintiff, and the appellee, The Kroger Company, as defendant.

On November 11, 1955, and prior thereto, the defendant maintained a store fronting easterly on East Broadway at the intersection of Nevada Street in East Toledo.

The allegations of plaintiff's petition, considered pertinent here, are as follows:

"(2) That defendant corporation conducts a general grocery business at the address aforesaid; that immediately next to and abutting the building in which said grocery business is conducted, a lot is maintained and controlled for the parking of cars for the purpose of transacting business in said store; that said lot is and was at all times herein referred to, under the control of defendant corporation; that the parking lot aforesaid is illuminated by small yard lights which leaves the parking area in semi-darkness; that parking areas for automobiles are marked off with yellow lines: that in the approximate center of what is commonly known as the southerly portion of said parking lot, there is a curbing: that said curbing is approximately three (3) inches high and is the approximate width of the yellow lines aforedescribed and said curbing is also painted yellow; that the

raised curbing is not readily distinguishable to the human eye from other painted lines in said parking area aforedescribed; that said curbing constitutes a dangerous and unsafe condition; that defendant, through its officers and employees, knew of the existence of the dangerous and unsafe condition, but have failed and neglected to remedy said dangerous and unsafe condition.

"(3) Further pleading, plaintiff says that on or about November 11, 1955, at approximately 7:30 p. m., her automobile was parked in the Kroger lot aforedescribed; that her son had driven it to said parking area and she came by bus to shop at said Kroger store and then pick up the automobile; that she made sundry purchases in the store and proceeded back to her automobile; that at said time and place all conditions described in the immediate preceding paragraph were present; that upon reaching the curbing aforedescribed, she caught the edge of the curbing with her foot and was made to fall with force to the ground, resulting in serious and grievous injuries to her person as hereinafter more specifically set forth; that the fall and resulting injuries were due directly and proximately to the carelessness and negligence of the defendant as aforesaid."

By its answer, defendant denies negligence and alleges affirmatively that plaintiff was guilty of contributory negligence.

By her reply, plaintiff denies that she was guilty of contributory negligence.

We are required and will attempt to set out and consider the evidence most strongly in favor of the plaintiff.

Plaintiff, a woman 62 years of age, went to the store of the defendant at about 7 or 7:30 o'clock in the evening of November 11, 1955, and purchased groceries including meat, which were placed in a paper bag. Thereafter plaintiff proceeded to walk from the store, carrying the groceries, through a parking lot maintained by the defendant, adjacent to and south of its store. As plaintiff reached a place in the parking lot about 60 feet in a southwesterly direction from the store and while passing between two parked automobiles, she was tripped and thrown by a curbing from one to two inches high, extending from the easterly side of the lot to the westerly side thereof, a distance of about 108 feet, which curbing was maintained by the defendant.

The plaintiff testified in part:

"A. I said I bought my groceries and checked out and paid for them at the cashier's desk and then I picked my—they handed me the bag in my arms, and I had my big pocketbook on my other arm, like this, and carried them out, and I went out the door and down the sidewalk to the corner of the building, and sonny-boy had told me that the car was in the farther corner over by the alley, in the further corner down, so I was walking down there and there were cars parked in there, packed high everywhere, and there was people driving in and backing out and driving in, and I was scared watching for them. Well, I seen these two cars and I don't know, I thought I will walk in between them, and I walked in between them and there was plenty of room, and two cars facing them on the other side, and I knew there was a line there because I could see the line, but I didn't know there was a raise there and there wasn't light enough to see it, and I walked along and looking too for the car and I supposed that there line was the same as the ones that run into the—you know, between the cars. Well, I caught my toe and it throwed me and I landed just like that, on my knees and my hands, and mostly on this arm here. My pocketbook went a flying and my groceries went a flying out of the sack.

"* * *

"A. I had never been in that lot before. We always parked on the other side and they told Dallas not to park on that side anymore, to park back in there, so that is why he was there that night. That is the first time I was ever in that lot.

"* * *

"Q. And if you will look in this photograph here there is a little pole down here with a cluster of five lights on. Was that pole and those lights there that night? A. This is the only one that I saw, right here. (Indicating.)

"Q. You are referring to a light pole which is over on the southeast corner of the lot itself, is that right? A. Yes, sir.

"Q. Over by the sidewalk? A. Over by the sidewalk.

"Q. At the far end of the lot away from the store? A. Yes, sir.

"Q. That light pole was there that night then, is that right? A. Yes, sir.

"Q. But you say that you didn't see this light pole here? A. No, I didn't, I couldn't see anything in here.

"Q. Would you say that this light pole was not there? A. I couldn't say that for sure because if it was it wasn't lit because I was over there the other night and I was surprised.

"Q. Just referring to the night of November 11, 1955, this light pole here would you say that it was or was not there? A. I didn't see it. It was dark in that lot.

"Q. Now, I will hand you a photograph marked defendant's exhibit 'E' and ask you if you can identify that or the scene that it portrays? A. Well, this is the Kroger lot, but I don't know, I can't tell. It must be on the other side of the store there.

"Q. Isn't that a picture looking towards the store from back in the lot from about where your car was that night? A. Only my car was over in this corner further.

"Q. Now, you see in this photograph, do you not, a cluster of three lights? A. I see them now but they were not there then.

"Q. You say they were not there? A. No. " * * *

"A. Yes, they were. It was real busy that night and they were just driving in and out and they couldn't find places to park and they were driving through fast, and some of them going one way through the alley and some from the street in.

"Q. But there were lights from the cars coming on both sides of these parked cars? A. Yes.

"Q. Well, if the cars hadn't been parked there, close as they were, all solidly parked there, do you feel that you would have been able to see this curb? A. I don't know whether I would or not. If there were lights up where you say they were they were not turned on because there is only one, that one place that there was lights shining down on.

"Q. You said the cars were parked solidly on both sides of this curb? A. Yes.

"Q. And it made it dark in there because of that fact? A. Yes, sir.

"Q. And you went in there holding this bag and looking for your car? A. Yes. I knew practically where the car was because sonny-boy told me where it was.

"Q. Well, then you did say on direct examination that you saw this yellow line? A. I could see this yellow line in there.

"Q. You glanced down and saw it going through there? A. Yes.

"Q. And right after that you fell, is that it? A. Yes, sir, I seen it when I started in there and I thought it was just the same as the yellow lines that were running up to it."

The evidence is not disputed that a yellow line about four inches in width similar to the other lines which divided the parking spaces in the lot was upon the upper surface of the curbing.

Plaintiff testified further, in substance, that when she started to walk between the parked cars she observed the yellow line extending easterly and westerly ahead of her but did not observe that the line was painted upon the raised curbing, for the reason that the lighting was not sufficient for her to see that the line was raised and that it was upon the upper surface of the curbing.

The legal responsibility of a storekeeper toward customers is stated in the first three paragraphs of the syllabus in *Englehardt, a Minor,* v. *Phillips,* 136 Ohio St., 73, 23 N. E. (2d), 829:

"1. A person who goes upon the land or premises of another at his invitation, express or implied, sustains the relationship of invitee to the latter.

"2. Legal liability for negligence is based upon conduct involving unreasonable risk to another, which must be established by affirmative evidence tending to show that such conduct falls below the standard represented by the conduct of reasonable men under the same or similar circumstances.

"3. An owner or occupier of lands is liable in damages to those who, using due care for their own safety, come thereon at his invitation or inducement, expressly or impliedly given, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the premises, which is known to him but not to them, and which he has negligently suffered to exist."

The law applicable to the relationship of the parties in this appeal has been stated in paragraphs one and two of the syllabus in *Campbell* v. *Hughes Provision Co.,* 153 Ohio St., 9, 90 N. E. (2d), 694:

"1. The operator of a store who invites people into his premises to transact business must exercise toward them ordinary care to maintain the premises in a reasonably safe condition. (Paragraph one of the syllabus of *J. C. Penney Co., Inc.,* v. *Robison,* 128 Ohio St., 626, approved and followed.)

"2. Where the operator of a retail food store places and maintains the outside part of one of its merchandising counters within 16 to 18 inches of the arc of the outer edge of a swinging door, and an aged customer facing such counter and waiting to be served is struck, knocked down and injured by reason of such door being pushed open from the outside by a third person, negligence on the part of the store operator, proximate cause, contributory negligence and whether the injury should have been foreseen by the store operator as a natural consequence of the condition created are all questions for determination by the trier of the facts."

The rule of law considered pertinent here is also stated in the opinion in the *Campbell case, supra,* at page 11, as follows:

"One who operates a store and invites people into his premises to transact business must exercise ordinary care to maintain the premises in a reasonably safe condition so that his customers will not be unnecessarily and unreasonably exposed to danger. *J. C. Penney Co., Inc.,* v. *Robison,* 128 Ohio St., 626, 193 N. E., 401, 100 A. L. R., 705; *S. S. Kresge Co.* v. *Fader,* 116 Ohio St., 718, 158 N. E., 174, 58 A. L. R., 132.

"And, in complying with such rule, a store operator should take into account that the aged and infirm as well as the young and robust may visit his establishment in response to his general invitation."

The decision by the Supreme Court in the *Campbell case, supra,* affirmed the decision of the Court of Appeals for Summit County.

We therefore consider a part of the opinion in *Campbell* v. *Hughes Provision Co.,* 87 Ohio App., 151, at page 156, 94 N. E. (2d), 273, by Doyle, J., appropriate in the determination of this appeal:

"1. It is said in 38 American Jurisprudence, Negligence, Section 131:

" 'The proprietor of a store, shop, or other place of busi-

ness kept open for public patronage is not under an insurer's liability as to the safety of persons who come thereon, but he does owe to customers who enter the premises, while the establishment is open for business, the duty of exercising ordinary care to keep the aisles, passageways, and such other parts of the premises as are ordinarily used by customers in transacting business in a reasonably safe condition for use by the persons thus entering, and to warn them of dangerous conditions upon the premises which are known, or which reasonably should be known, to him but not to them. This duty exists by reason of the fact that the customers enter the premises by the invitation, at least by the implied invitation of the proprietor.'

''And to the same effect are 29 Ohio Jurisprudence, Negligence, Section 61; *Cincinnati Baseball Club Co. v. Eno,* 112 Ohio St., 175, 147 N. E., 86; *Lake Brady Co. v. Krutel, Admx.,* 123 Ohio St., 570, 176 N. E., 226; *Englehardt v. Phillips,* 136 Ohio St., 73, 73 N. E. (2d), 829.

''It is argued by the appellant that 'before there can be a liability on the part of a storekeeper for the arrangement of its store, there must be competent evidence of the departure from some standard, and that it was not up to a jury, in the absence of such evidence, to fix the standard such as was done in the instant case. In the absence of proof as to a specific requirement or established custom or usage, it was not proper to leave to the jury the question as to whether the defendant's storeroom was in a reasonably safe condition. In the absence of evidence of established or comparative standards of care as to the equipment of a storeroom, it is not for the jury to say what those standards shall be' In support of this claim the following Ohio cases are cited: *Englehardt v. Phillips,* 136 Ohio St., 73, 73 N. E. (2d), 829; *Shoemaker v. Elec. Auto-Lite Co.,* 69 Ohio App., 169, 41 N. E. (2d), 433; *Jackson v. Cincinnati Gas & Elec. Co.,* 70 Ohio App., 139, 42 N. E. (2d), 218.

''We do not agree that the conduct of others fixes a legal standard of care. The substantive law tells what the standard of conduct for negligence is. This standard is fixed and is independent of the actual conduct of others. It consists of a failure to exercise that degree of care which an ordinarily careful and prudent person would exercise under the same or similar cir-

cumstances, in keeping the premises in a reasonably safe condition for the use of the persons invited to enter and transact business. Of course, it is fundamental that before failure to use such care can be made the basis for recovery, it must appear that the complainant falls within the class of persons to whom the duty of care was owing, and that the conduct of the defendant was such that a reasonably prudent and careful person should have foreseen or anticipated from such conduct the probability of injury to persons in the plaintiff's general situation. *Gedeon* v. *East Ohio Gas Co.,* 128 Ohio St., 335, 190 N. E., 924; *Ford* v. *Wanamaker,* 224 N. Y., 655, 121 N. E., 868.

"It is established, we think, that the conduct of others doing business under similar circumstances and conditions, or under 'established customs or usages,' may, under certain circumstances, be admissible in evidence as some evidence of the nature of the condition in question, because it indicates what is the influence of the thing or condition on the ordinary person in that situation. It must not, however, be taken as a legal standard for the conduct required by law. II Wigmore on Evidence (Third Ed.), Section 461.

"Professor Wigmore, in the above-mentioned treatise, quotes (at top of p. 490) the language of Holmes, J., in *Texas & P. Rd. Co.* v. *Behmyer,* 189 U. S., 468, 47 L. Ed., 905, 23 S. Ct., 622, which we believe is entirely applicable to this discussion. He said:

" 'What usually is done may be evidence of what ought to be done; but what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not.' "

The headnotes in *Ingalls* v. *Western Reserve University,* 61 Ohio Law Abs., 1, 102 N. E. (2d), 605, are considered applicable to the facts in the case now before us on this appeal:

"1. One who is not aware of the dangerous condition of the premises on which he enters as an invitee or business visitor is not guilty of contributory negligence as a matter of law in case of injury.

"2. The issue of negligence under the above circumstances is a question for the jury.

"3. An owner of property owes the duty of ordinary care

to persons entering upon such property as invitees or business visitors.

"4. A business invitation includes an invitation to use such parts of the premises as the visitor is reasonably led to believe are held open to him. If the owner has intentionally or negligently misled such visitor into the reasonable belief that a particular part of such premises is open to the visitor he owes him the duty of ordinary care while it is being used by such visitor."

The law governing the trial court in ruling upon a motion for a directed verdict is stated in paragraphs one, two, three and four of the syllabus in *Hamden Lodge* v. *Ohio Fuel Gas Co.*, 127 Ohio St., 469, 189 N. E., 246:

"1. The term 'scintilla,' when used to designate a rule of trial procedure, is confusing and misleading and should be abandoned.

"2. The so-called 'scintilla rule,' requiring a trial judge to submit a case to the jury if there is any evidence, however slight, tending to support each material issue, no longer obtains in Ohio. (Second and third paragraphs of the syllabus in *Ellis & Morton* v. *Ohio Life Insurance & Trust Co.*, 4 Ohio St., 628, and the case of *Clark* v. *McFarland*, 99 Ohio St., 100, overruled.)

"3. Upon motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. But if upon any essential issue, after giving the evidence such favorable construction, reasonable minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him.

"4. Where from the evidence reasonable minds may reach different conclusions upon any question of fact, such question of fact is for the jury. The test is not whether the trial judge would set aside a verdict on the weight of the evidence."

See opinion in *Hamden Lodge* v. *Ohio Fuel Gas Co.*, *supra*.

The law which the trial court was required to apply in ruling upon the motion for directed verdict is stated succinctly in the opinion by Zimmerman, J., in *Durham* v. *Warner Elevator Mfg. Co.*, 166 Ohio St., 31 at page 36, 139 N. E. (2d), 10, as follows:

"At the outset, we note the established rule that in the face of a motion to direct the jury to return a verdict for one of the parties to an action, which in effect is a demurrer to the evidence, the court must construe the evidence most strongly in favor of the party against whom the motion is made, and, where there is substantial competent evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in disposing of such a motion. *Wilkeson, Admr.,* v. *Erskine & Son, Inc.,* 145 Ohio St., 218, 61 N. E. (2d), 201; *Hilleary* v. *Bromley,* 146 Ohio St., 212, 221, 64 N. E. (2d), 832, 837; *Purdy, Admr.,* v. *Kerentoff,* 152 Ohio St., 391, 89 N. E. (2d), 565."

We are of the opinion that reasonable minds may reach different conclusions upon the facts as presented by the record before us and that such questions of fact are for the jury.

In passing on a motion for a directed verdict, the inferences to be drawn from facts proved or admitted, the credibility of the witnesses and the weight of the evidence are for the jury and not for the court.

We conclude, therefore, that the issues of negligence and contributory negligence were for the jury and the trial court erred in directing a verdict in favor of the defendant.

The judgment of the Court of Common Pleas is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

Fess and Smith, JJ., concur.