Theresa HOPKINS, Plaintiff-Respondent,

v.

SEFTON FIBRE CAN COMPANY,
Defendant-Appellant.

No. 31960.

St. Louis Court of Appeals.
Missouri.

May 18, 1965.

Whalen, O'Connor, Grauel & Sarkisian, Fred B. Whalen, Warren Grauel, St. Louis, for defendant-appellant.

Mogab & Hughes, Richard L. Hughes, Charles A. Mogab, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

This is an action for damages for personal injuries claimed to have resulted from a fall. Plaintiff obtained a verdict and judgment below for $6500 and defendant appealed.

Defendant contends that the court erred in refusing to direct a verdict in its favor because plaintiff failed to make a submissible case, in giving Instruction No. 1, in refusing Instruction A, and it also maintains that the judgment is excessive. We shall, therefore, review the evidence from a standpoint favorable to plaintiff and give her the benefit of any part of defendant's evidence favorable to her which is not contradicted by her own testimony and not contrary to her theory of recovery, and we shall also give her the benefit of all favorable inferences arising therefrom. Yarrington v. Lininger, Mo., 327 S.W.2d 104; Ukman v. Hoover Motor Express Co., Mo., 269 S.W.2d 35.

Plaintiff, a lady then 62 years of age, went to work for Food Service Management, Inc., on June 14, 1961. Under an oral arrangement with the defendant, which furnished the space in its plant and the physical equipment, Food Service operated a cafeteria for the convenience of the defendant's employees. Defendant's plant was located on the west side of Big Bend Boulevard in the City of Maplewood, Missouri. The front or east side was back from the street about 12 or 15 feet, and the building extended 541 feet westwardly. On the north side of the building was a parking lot approximately 100 feet in width and in excess of 500 feet in length, for the accommodation of the automobiles of defendant's employees and business visitors. It was also used by the employees of Food Service, with the knowledge and tacit consent of the defendant. Illumination was provided by four one thousand watt floodlights placed at equally spaced intervals on the north wall of the plant, at the roof line. The lights were operated by a single switch. Mr. Rasmussen, defendant's safety director, testified

that if a light was not operating the maintenance foreman would direct an electrician to replace the bulb. The two electricians work separate shifts, the first starting at 7:00 A.M. and the second ending at midnight, and they are on call during the remaining seven hours of the day. There were 8 rows of lane dividers or bumpers, each eighty feet in length, which extended from the north side of the lot towards the south, the rows being spaced forty-five feet apart. The lane dividers were timbers 6 feet in length, resembling railroad ties, about 6 inches in height and 8 inches in width, and were anchored to the surface. An interval of a few inches was left between the individual ties to designate a single parking space, and cars were parked against the dividers on an angle, with one row of automobiles on each side facing into the dividers. The ties were creosoted, and dark, and the surface of the lot was paved with asphalt, gray in color.

Plaintiff's hours of employment were from 6:30 P.M. to 9:30 P.M. On the day she began to work for Food Service, June 14, 1961, she walked to defendant's plant from her home, about 4 blocks away. When she arrived at the northeast corner of defendant's property she walked straight west, a distance of over five hundred feet, down a twenty-two foot driveway which was on the north side of the parking area. When she came opposite the employees' entrance to the plant, located on the north side of the building and towards the west end, she walked straight south to the door. On leaving at 9:30 that night she went out by the same door and walked directly east, on a narrow pathway which ran along the south side of the parking area, between the south ends of the rows of ties and a cyclone wire fence, until she reached Big Bend Boulevard.

Upon entering the plant the second day plaintiff traversed the same route on her way in to the building that she had followed the previous night. When she and her fellow-worker, Mrs. Martha Harris, prepared to leave around 9:30 P.M. it was raining, and Mrs. Harris offered to drive plaintiff home. They left the building by the employees' entrance, and, according to plaintiff, walked an unspecified distance eastwardly on the pathway, Mrs. Harris leading and plaintiff following. At that point Mrs. Harris, who had no umbrella as did plaintiff, remarked that she would go ahead and open the door to her car. Mrs. Harris then left the pathway and walked on an angle, in a northeastwardly direction, to where her car was parked near the center of the parking area. It is not clear from plaintiff's testimony whether she continued to walk eastwardly along the pathway, or if so, how far. She did testify that after Mrs. Harris left it thundered and lightning flashed, and that she stopped to get her footing. She then called out and Mrs. Harris answered, " * * * 'I'm over here,' * * *." Plaintiff thereupon started to walk on an angle, northeastwardly across the parking area, and tripped and fell forward when she came to the first row of ties, injuring herself. Mrs. Harris helped plaintiff to arise, retrieved her umbrella, and assisted her to the car. Plaintiff testified that she did not know that there were ties stretching in rows across the parking area and that, although it was daylight when she entered the plant on the 14th and 15th, she had not observed the ties because they were covered by the overhang of the cars parked on the lot. Plaintiff also stated that she did not see the ties before she fell because it was too dark, and that the middle two of the four floodlights were out. Because of the conclusion we have reached regarding the issue of submissibility it is unnecessary to state the nature and extent of plaintiff's injuries.

The merits of defendant's appeal appear to center primarily on Instruction No. 1, plaintiff's only verdict directing instruction. In their respective briefs both parties agree that the plaintiff thereby submitted her case in the conjunctive, upon two predicates of negligence: (1) insufficient illumination by reason of two of the floodlights being out at the time plaintiff fell; and (2), the placing of the dividers or ties by the defendant

on and about its parking lot. Loath as we are to differ with learned counsel, we cannot bring ourselves to share their view. The instruction is long and involved, and in the interest of brevity we shall not quote it. But as we read the instruction, and as we think normally intelligent laymen serving as jurors would undoubtedly understand it, we believe that the jury was in effect instructed that the parking lot with the dividers on it created a hazardous condition to one walking on it at night, not independently of the illumination, but only because of the inadequate lighting due to the non-functioning of two of the floodlights. Be that as it may, we shall treat the points raised by defendant as the parties have done in their briefs.

As to the lack of illumination, defendant asserts that plaintiff failed to make a case on that issue because there was no evidence adduced that the defendant had actual or constructive notice that the lights were out. Plaintiff does not dispute the legal principles regarding notice upon which defendant's argument is based, Gruetzemacher v. Billings, Mo., 348 S.W.2d 952; Howard v. Johnoff Restaurant Co., Mo., 312 S.W.2d 55; Brophy v. Clisaris, Mo.App., 368 S.W. 2d 553; nor does plaintiff contend that she produced evidence of actual knowledge on the part of defendant. Her sole contention in that regard is that; "There was ample evidence that poor lighting conditions had existed for some time * * *," so that defendant should be charged with constructive notice. In support of that assertion plaintiff attempts to piece together two independent bits of evidence; the first, plaintiff's testimony that at the time she fell two of the four floodlights were out; and the second, that part of the testimony of defendant's witness, Mrs. Harris, in which she was asked:

"Q. Were there any differences in the lighting that was there that night and that was there any other night that you went there?

"A. No, I don't think so."

From this tenuous premise plaintiff argues that such evidence was " * * * sufficient to allow the jury to conclude that the condition had existed for a matter of days. * * *"

With that conclusion we cannot agree. In the first place, the foregoing part of Mrs. Harris' testimony is lifted out of context. The question and answer which immediately preceded it, for example, were:

"Q. Were there any of those lights out on this particular night?

"A. Not that I know of."

Furthermore, the substance of Mrs. Harris' testimony was that the lot was "well lighted" at the time plaintiff fell, and that the witness had no difficulty in seeing the ties as she walked to her car. Of even greater importance, however, is the fact that plaintiff's own testimony conclusively rebuts any supposed inference that the lights had been out for days. On direct examination by her own counsel plaintiff stated:

"Q. The first night that you had left, not the night you had fallen, had you noticed whether or not any parking light was lit?

"A. Yes, it was.

"Q. Now, on the night that you fell did you notice anything different about the lighting conditions?

"A. Yes, there were two lights out."
And to the same effect:

"Q. These lights that you spoke about in the parking lot, the night before, when you left the building and walked up this walkway, did you notice whether the lights were on or not at that time?

"A. Yes, they were on that night."

In a material matter of this kind, a plaintiff is conclusively bound by his own testimony, Williams v. Kansas City Transit, Inc., Mo., 339 S.W.2d 792; Brooks v. Stewart, Mo., 335 S.W.2d 104, 81 A.L.R.2d 508; Taylor v.

Vestal, Mo., 304 S.W.2d 820. And a plaintiff may not predicate a recovery upon a theory which is contrary to his own positive evidence, Tomlin v. Alford, Mo., 351 S.W. 2d 705. In view of plaintiff's unequivocal and reiterated testimony that all of the floodlights were burning on the night previous to her fall it is futile to now assert, as she does, that the jury could draw the inference that the lights had been out for a matter of days. The fact of the matter is that there was absolutely no evidence introduced to show how long the two floodlights had been out before plaintiff fell. It is a matter of common knowledge that electric light bulbs burn out from time to time and that it is virtually impossible to know in advance when such a failure will occur. For all that plaintiff's evidence showed, the non-functioning floodlights may have burned out only a few minutes before plaintiff fell. In any event, plaintiff's evidence was insufficient to show that the condition existed for a length of time sufficient to charge the defendant with constructive knowledge, and plaintiff therefore failed to make a submissible case on her first predicate of negligence. Robinson v. Great Atlantic & Pacific Tea Co., 347 Mo. 421, 147 S.W.2d 648; State ex rel. Trading Post Co. v. Shain, 342 Mo. 588, 116 S.W.2d 99; Brophy v. Clisaris, supra.

■ Regarding Instruction No. 1, defendant maintains that plaintiff was aware that actual or constructive knowledge of the non-functioning lights was an essential element of her case because she did submit that issue in the instruction, as follows " * * * and if you further find that the defendant knew or in the exercise of ordinary care should have known of the aforesaid condition, * * *" the condition referred to being the two unlighted floodlights. From this defendant argues that the giving of the instruction was error because the foregoing portion lacked evidentiary support. Plaintiff's response is that regardless of whether there was proof as to the time the lights had been out, the two predicates of negligence had been con-

junctively submitted, and that where there is evidence to justify the submission of one of the conjunctively submitted predicates of liability no error is committed in giving the instruction even though the evidence may not have supported the other predicate. That is the rule. Beineke v. Terminal R. R. Ass'n of St. Louis, Mo., 340 S.W.2d 683; Wattels v. Marre, Mo., 303 S.W.2d 9, 66 A.L.R.2d 433; Adams v. Atchison, Topeka and Santa Fe Railway Co., Mo., 280 S.W.2d 84.

The other predicate on which plaintiff relies, as stated, is that the mere placing of the dividers on and about the parking lot, standing alone, was sufficient to establish defendant's negligence. In support of her contention plaintiff cites McFarland v. Sears, Roebuck & Co., Mo.App., 91 S.W.2d 615. In that case, however, plaintiff testified that it was so dark that one could not see the ground, and that she was caused to stumble and fall over a wooden curbing, which she could not see, located in an approach from the parking lot to defendant's store premises. In short, it was the failure of the defendant to provide a reasonable amount of light to illuminate the approach, and the curbing, not the maintenance of the curbing alone, which the court held was sufficient to make a case for the jury. The factor of absence of light was also present in all but two of the other cases cited by plaintiff, Dean v. Safeway Stores, Inc., Mo., 300 S.W.2d 431; Cannon v. S. S. Kresge Co., 233 Mo.App. 173, 116 S.W.2d 559; Blake v. North East White Tower System, Inc., 258 App.Div. 1027, 17 N.Y.S.2d 91; Acme Markets v. Remschel, 181 Va. 171, 24 S.E.2d 430; Costello v. Wyss, Inc., 200 Pa. Super. 568, 190 A.2d 170; Great Atlantic & Pacific Tea Co. v. Lyle, 49 Tenn.App. 78, 351 S.W.2d 391. And in those two, Nary v. Parking Authority of Town of Dover, N.J., 58 N.J.Super. 222, 156 A.2d 42 and Crampton v. Kroger Co., 108 Ohio App. 476, 162 N.E.2d 553, the evidence was that the bumper and curbing over which the respective plaintiffs fell were painted the same

color as the lane dividing lines and were therefore difficult to see.

Plaintiff maintains that she occupied the legal status of an invitee, a position with which defendant agrees. But the occupier of premises is not an insurer of the safety of an invitee. His duty, and the corresponding duty of the invitee, are succinctly stated in Wilkins v. Allied Stores of Missouri, Mo., 308 S.W.2d 623, 628:

"* * * Under the rule the defendant was only required to exercise ordinary care to prevent injury to plaintiff. The defendant, as the occupier of the premises in question, was not liable to plaintiff-invitee for injuries resulting from an open and obvious condition of the premises as well known to the plaintiff as to the defendant. Accordingly, if the plaintiff was aware of the condition, or it was such that she must have been conscious of it and of the consequences of disregarding it, she cannot recover. Summa v. Morgan Real Estate Co., 350 Mo. 205, 165 S.W.2d 390, 393; Mullen v. Sensenbrenner Mercantile Co., Mo.Sup., 260 S.W. 982, 984, 33 A.L.R. 176; Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723, 726; Harper v. First National Bank of Kansas City, Mo. Sup., 196 S.W.2d 265, 267; Schmoll v. National Shirt Shops of Missouri, 354 Mo. 1164, 193 S.W.2d 605, 608; Fletcher v. North Mehornay Furniture Co., 359 Mo. 607, 222 S.W.2d 789, 794. In the Schmoll case, supra, 193 S.W.2d 605, 608, the court said: 'Defendant, who was not subject to liability for injuries resulting from dangers that were obvious, should not be obligated to anticipate that its patrons, in the exercise of ordinary care, would fail to appreciate dangers generally known to be inherent in conditions that were obvious.'"

With reasonably adequate illumination the presence of the dividers or ties was readily apparent to any one using the parking lot.

The photographs introduced in evidence, taken on what appears to be an overcast day, show that the dark brown dividers were readily distinguishable from the light gray asphalt surface of the lot. The condition was open and obvious, more so, in our opinion, than that in Wilkins v. Allied Stores of Missouri, supra, where the court held that the evidence was insufficient to show negligence on the part of the defendant.

There is nothing unusual about the use of dividers, ties or bumpers on parking lots to designate and divide the area in which automobiles are to be parked in orderly rows. As was said in Brooks v. Sears, Roebuck & Co., 302 Mass. 184, 19 N.E.2d 39, 41: "* * * It is a matter of common knowledge that similarly constructed curbs exist in parking spaces in this Commonwealth. They are incidental to the ordinary and common construction of such places and are structures the plaintiff should have expected to find in the parking space involved. Cowen v. Kirby, 180 Mass. 504, 506, 62 N.E. 968; Heaney v. Colonial Filling Stations, Inc., 262 Mass. 338, 341, 159 N.E. 916. They facilitate the orderly parking of motor vehicles and tend to prevent collisions. * * *" Nor are such dividers inherently dangerous or unsafe obstructions. On that point it was stated in Downing v. Drybrough, Ct.App.Ky., 249 S.W.2d 711, 712, "The appellee insists that the division strip was not a dangerous or unsafe obstruction. We agree that it was not of itself dangerous or unsafe. It is common knowledge that many parking lots are so constructed and that people use them without injury or inconvenience. The troublesome question is, did this strip of concrete, 10 inches in height and 8 or 9 inches in width, become a dangerous or unsafe obstruction when considered in connection with the lighting conditions existing at the time of the accident? If the lot was not adequately lighted, we think the division strip might reasonably be said to constitute a dangerous obstruction amounting to a hazard to those using the lot.

* * *" And so, in the instant case, the dividers became unsafe or dangerous obstructions only when there was an absence of an adequate amount of illumination. It is therefore our conclusion that the mere placing of them on the parking lot was insufficient to show negligence on the part of defendant. Wilkins v. Allied Stores of Missouri, supra; McFarland v. Sears, Roebuck & Co., supra; Brooks v. Sears, Roebuck & Co., supra; Downing v. Drybrough, supra; Glennon v. Great Atlantic & Pacific Tea Co., 90 R.I. 113, 155 A.2d 330; Seal v. Safeway Stores, Inc., 48 N.M. 200, 147 P.2d 359.

In view of that conclusion it is unnecessary to consider other contentions of the defendant, not likely to arise on a retrial. Defendant insists that we should reverse the judgment and remand the case with directions to the trial court to enter judgment for defendant in accordance with its motion for a directed verdict at the close of all the evidence. But it is by no means certain that plaintiff will be unable to adduce evidence of the non-functioning of the lights for a length of time sufficient to charge defendant with constructive notice, under all of the circumstances, and "The furtherance of justice requires that a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had; * * *." East v. McMenamy, Mo., 266 S.W.2d 728, 732; Yarrington v. Lininger, Mo., 327 S.W.2d 104; Smith v. Arthur S. Baue Funeral Home, Mo., 370 S.W.2d 249.

Accordingly, the judgment should be reversed and the cause remanded for a new trial. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment is reversed and the cause remanded for a new trial.

WOLFE, P. J., ANDERSON, J., and DOUGLAS W. GREENE, Special Judge, concur.